UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ACUITY, A Mutual Insurance Company,

Plaintiff,

v.

Extreme Lawns, LLC; Michael Velde;
Susan A. Warren; and Joseph Kloster, as
Trustee for the heirs and next of kin of
Tiffany Kloster, Deceased,

Defendants.

Case No. 19-cv-0025 (WMW/ECW)

**ORDER**

---

This matter involves an insurance-coverage dispute between Plaintiff ACUITY, A Mutual Insurance Company (Acuity), and Defendant Joseph Kloster. Before the Court are the parties' cross-motions for summary judgment. (Dkts. 18, 22.) For the reasons addressed below, the Court grants Kloster's motion for summary judgment and denies Acuity's motion for summary judgment.

**BACKGROUND**

The material facts of this case are not in dispute. Defendant Extreme Lawns, LLC, is a limited liability company that is engaged in the business of providing lawn care services. The sole members of Extreme Lawns are Defendant Michael Velde and his wife, Toni Warren. Extreme Lawns has no employees, and Velde performs all of the lawn care work for Extreme Lawns.

In 2012, Velde purchased a 2012 Ford F-150 pickup truck (the pickup truck) and Defendant Susan A. Warren, who is Toni Warren's mother, co-signed for the loan. As

listed on the title, Velde and Susan Warren are the only owners of the pickup truck. Toni Warren made payments on the loan with funds from both her personal account and the Extreme Lawns business account. Extreme Lawns included the loan payments as a business expense on its tax returns. Extreme Lawns paid for the fuel for the pickup truck and the pickup truck was the only vehicle used in Extreme Lawns' business.

On October 17, 2018, Velde was driving the pickup truck to a business meeting with an Extreme Lawns client when he collided with a motorcycle operated by Tiffany Kloster, who died as a result of the collision. The parties stipulate that Extreme Lawns is vicariously liable for the acts of Velde in connection with the collision. When the collision occurred, Extreme Lawns was the named insured of an insurance policy issued by Acuity for the period of May 1, 2018 to May 1, 2019.

The Acuity policy provides coverage generally for business liability and medical expenses, but the policy contains a coverage exclusion for any bodily injury or property damage arising out of the ownership, maintenance, or use of any auto. Extreme Lawns purchased a Hired Auto and Nonowned Auto Liability Endorsement that modifies the policy to restore some coverage for auto liability. Relevant to this dispute, the endorsement provides:

**HIRED AUTO AND NONOWNED AUTO LIABILITY**

\*\*\*

**1.** Insurance is provided as stated below.

    **a. Hired Auto Liability**

        The insurance provided under the Liability and Medical Expenses Coverages Section, paragraph 1, Business Liability, applies to *bodily*

2

> *injury* . . . arising out of the maintenance or use of a *hired auto* by you or your *employees* in the course of your business.
>
> **b. Nonowned Auto Liability**
>
> The insurance provided under the Liability and Medical Expenses Coverages Section, paragraph 1, Business Liability, applies to *bodily injury* arising out of the use of any *nonowned auto* in your business.

2. For insurance provided by this endorsement only:

   a. The exclusions under Paragraph 1, Applicable to Business Liability Coverage, other than exclusions a, b, d, f and i and the Nuclear Energy Liability Exclusion, are deleted . . .

   b. Who is an Insured is replaced by the following:

   Each of the following is an insured under this endorsement to the extent set forth:

   (1) You for any covered auto.

   (2) Anyone else while using with your permission a covered auto you lease, hire, rent or borrow except:

   (a) The owner or anyone else except from whom you lease, hire, rent or borrow a covered auto. This exception does not apply if the covered auto is a trailer connected to a covered auto you own.

   (b) Your employee if the covered auto is owned by that employee or a member of his or her household.

   \*\*\*

   (e) A . . . member (if you are a limited liability company) for a covered auto owned by him or her or a member of his or her household.

3. The following additional definitions apply:

\*\*\*

3

  c.  "*Hired Auto*" means only those *autos* you lease, hire, rent or borrow. This does not include any *auto* you lease, hire, rent or borrow:

   (1) From any of your *employees*, . . . members (if you are a limited liability company) or members of their households;

***

  d.  "*Nonowned Auto*" means only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes autos owned by your employees, . . . members (if you are a limited liability company) or members of their households but only while used in your business.

Extreme Lawns paid a premium of $168 for the Hired Auto and Nonowned Auto Liability coverage, which represents 18.3 percent of the total premium.  Acuity provided Extreme Lawns two Policyholder Identification cards that state:

| | |
|---|---|
| Policy Number | [Redacted] |
| Policy Period | 05-01-18 To 05-01-19 |
| Named Insured | EXTREME LAWNS |
| Your Agency | BEARENCE MANAGEMENT GROUP 651.379.7800 |
| Your Car | HIRED AND NONOWNED AUTOS |

The policyholder identification cards also directed Extreme Lawns to "keep one card in your vehicle at all times."

Extreme Lawns requested from Acuity liability coverage under the policy as to claims arising from the October 17, 2018 motor vehicle collision.  Acuity denied coverage on December 26, 2018, asserting that the pickup truck did not meet the definition of "nonowned auto" because Extreme Lawns "borrowed" the pickup truck from its registered owners.  Extreme Lawns subsequently assigned its claim under the Acuity policy to Defendant Joseph Kloster, as Trustee for the heirs and next of kin of Tiffany Kloster.

Acuity commenced this declaratory judgment action on January 4, 2019, seeking a declaration that it has no duty to defend or indemnify Extreme Lawns against liability claims arising out of the October 17, 2018 collision and, therefore, that Joseph Kloster is not entitled to recover under the Acuity policy for claims of wrongful death arising out of the collision. Upon stipulation, the Court dismissed Extreme Lawns, Velde, and Susan Warren without prejudice from this action. Kloster filed a counterclaim for declaratory relief, seeking a declaration that the "nonowned auto" liability coverage applies to his claim against Acuity arising out of the collision that resulted in the death of Tiffany Kloster. Acuity and Joseph Kloster now cross-move for summary judgment.

## ANALYSIS

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015). A nonmoving party asserting that a fact is genuinely disputed must cite "particular parts of materials in the record" that support the assertion. Fed. R. Civ. P. 56(c)(1)(A). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation

5

marks omitted). Insurance coverage disputes ordinarily may be resolved on summary judgment based on the court's interpretation of the disputed insurance policy provisions. *See, e.g.*, *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 860–61 (8th Cir. 2012); *Kresse v. Home Ins. Co.*, 765 F.2d 753, 754–55 (8th Cir. 1985).

The interpretation of an insurance policy is governed by state law. *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010). Under Minnesota law, "[t]he interpretation of an insurance policy, including the question of whether a legal duty to defend or indemnify arises, is one of law." *Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). Subject to statutory laws of Minnesota, general principles of contract interpretation apply to insurance policies. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998); *Progressive Specialty Ins. Co. v. Widness*, 613 N.W.2d 781, 783 (Minn. Ct. App. 2000). When a state's highest court, here the Minnesota Supreme Court, has not decided an issue, this Court predicts how the state's highest court would resolve that issue. *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006).

The goal of insurance policy interpretation is to give effect to the parties' intent. *Nathe Bros. v. Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn. 2000). The Court construes the terms of the policy as a whole "according to what a reasonable person in the position of the insured would have understood the words to mean." *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977). Unambiguous language in an insurance policy is given its usual and accepted meaning. *McDonough*, 608 F.3d at 390–91 (citing *Lobeck*, 582 N.W.2d at 249). The language of an insurance policy is

ambiguous only if it is susceptible of more than one reasonable interpretation. *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc. Co.*, 825 N.W.2d 695, 705 (Minn. 2013). Extrinsic evidence of intent shall not be used to create ambiguity where no such ambiguity exists on the face of the policy. *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 498 (Minn. 1995). It is the Court's duty to "fastidiously guard against the invitation to create ambiguities where none exist." *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn. 1979) (internal quotation marks omitted).

Ambiguity in an insurance policy ordinarily is construed against the insurer. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002). The disparity in bargaining power between insurance companies and insureds supports a conclusion that public policy favors an interpretation that is broadly protective of the rights of insureds. *Depositors Ins. Co. v. Dollansky*, 919 N.W.2d 684, 689 (Minn. 2018).

At issue here is whether Velde's pickup truck is a "nonowned auto" under the Acuity policy, which provides:

> "*Nonowned Auto*" means only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes autos owned by your employees, . . . members (if you are a limited liability company) or members of their households but only while used in your business.

Kloster argues that the pickup truck is a nonowned auto because the policy's definition includes autos owned by members of a limited liability company while used in Extreme Lawns' business. Acuity counters that the pickup truck does not qualify as a "nonowned auto" under the policy because Extreme Lawns borrowed the pickup truck from Velde.

Acuity relies heavily on *State Farm Fire and Casualty Co. v. ARC Manufacturing, Inc.*, 11 F. Supp. 3d 898, 906 (D. Minn. 2014), in which the district court considered what constitutes a borrowed auto under Minnesota law. There, ARC's Vice President, Ronald Lammert, was driving a vehicle from a job site when he was involved in a collision that caused another person's death. *ARC Mfg.*, 11 F. Supp. 3d at 900–01. Lammert was the registered owner of the vehicle, but ARC purchased the vehicle, paid all license, registration, maintenance, fuel, and insurance expenses, and depreciated the vehicle on its corporate tax returns. *Id.* at 901. ARC also was the named insured on a contractor's insurance policy obtained from State Farm. *Id.* at 902. The policy provided business liability insurance but excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any . . . auto . . . owned or operated by or rented or loaned to any insured. *Id.* The exclusion, however, did not apply to "bodily injury or property damage arising out of the use of any non-owned auto in [ARC's] business by any person other than [ARC]." *Id.* The policy defined a nonowned auto as "any auto [ARC] do[es] not own, lease, hire or borrow which is used in connection with [ARC's] business." *Id.*

As here, *ARC Manufacturing* presented the narrow question of whether the vehicle was a nonowned auto, which was defined in the insurance policy as any auto that "ARC does not 'own, lease, hire or borrow which is used in connection with ARC's business.'" *Id.* at 904. State Farm argued that, because ARC borrowed or hired the vehicle from Lammert, the vehicle did not meet the definition of nonowned auto and, therefore, coverage for the accident did not meet the criteria for the exception to the Auto Exclusion. *Id.* The

8

court reasoned that "borrow" means "to take something for temporary use" or "to obtain or receive (something) on loan with the promise or understanding of returning it or its equivalent." *Id.* at 905 (internal quotation marks omitted). ARC borrowed the vehicle from Lammert, the court concluded, because although Lammert retained title to the vehicle, ARC consistently used that vehicle on loan with the understanding that, after using the vehicle for ARC's business, it would be returned to Lammert's personal possession. *Id.* at 906.

The facts of *ARC Manufacturing* are distinguishable from those here because the policy definition of nonowned auto in *ARC Manufacturing* did not include the second sentence of the definition of nonowned auto that is present in the policy here.[1] The nonowned auto definition in the policy at issue in *ARC Manufacturing* contained a second sentence that provided, "[h]owever, if you are a partnership, a non-owned auto does not include any auto owned by any partner." The same is not true here.

The Hired Auto and Nonowned Auto Liability Endorsement provides that it "applies to *bodily injury* arising out of the use of any *nonowned auto* in your business." The definition of "nonowned auto" expressly provides that nonowned auto includes autos owned by Extreme Lawns' members while used in Extreme Lawns' business. The parties do not dispute that Velde is a member of Extreme Lawns and was using the pickup truck in Extreme Lawns' business when the collision occurred. As such, the pickup truck falls

---

[1] Moreover, the court in *ARC Manufacturing* noted that it was "not required to decide definitively if ARC either hired or borrowed the [vehicle]," because it was sufficient to conclude that a jury could not find under the facts of the case that the vehicle was neither hired nor borrowed. *Id.* at 907.

squarely within the meaning of "nonowned auto" included in the second sentence of the definition. What remains to be determined is how the first and second sentence of the definition of nonowned auto inform each other.

> "*Nonowned Auto*" means only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes autos owned by your employees, . . . members (if you are a limited liability company) or members of their households but only while used in your business.

According to Acuity, the first sentence of the definition sets out the actual requirements that must be met for a vehicle to be considered a "nonowned auto," and the second sentence provides illustrations of vehicles that would qualify if the first sentence's requirements are met. In other words, "to even trigger consideration of the definition's second sentence, a vehicle must *not* be owned, leased, hired, rented or borrowed by the named insured," Acuity contends. Kloster concedes that, if an auto fits one of the categories listed in the first sentence, that is, if the auto is owned, leased, hired, or rented by the insured, the auto is not included in the definition of "nonowned auto."[2] But Kloster maintains that by providing examples of autos that are included in the nonowned auto definition, the second sentence resolves any potential ambiguity created by the word "borrow."

---

[2] For this reason, Kloster's argument that, because there is conflict between the first and second sentence of the non-owned auto definition, the more particular language in the second sentence controls is unavailing. *See Allied Mut. Ins. Co. v. Askerud*, 94 N.W.2d 534, 540 (Minn. 1959) ("In the event of a conflict between general and particular language, the particular controls.").

Several courts have addressed a substantively identical definition of nonowned auto and commented on the relation between the two sentences. *See, e.g.*, *Union Standard Ins. Co. v. Hobbs Rental Corp.*, 566 F.3d 950, 953 (10th Cir. 2009); *First Chi. Ins. Co. v. Molda*, 36 N.E.3d 400, 411 (Ill. App. Ct. 2015); *Pekin Ins. Co. v. Benson*, 714 N.E.2d 559, 562 (Ill. App. Ct. 1999). In *Molda*, the Illinois Court of Appeals interpreted an identical definition of nonowned auto in the following manner:

> Under the plain language of the definition of nonowned auto, a vehicle is covered if (1) it is not owned, leased, hired or borrowed by Metrolift and (2) it is used in connection with Metrolift's business. After that basic definition, the policy makes clear that vehicles not owned, leased, hired or borrowed by Metrolift but owned by its employees would be entitled to coverage if used in connection with Metrolift's business.

36 N.E.3d at 411. The Louisiana Court of Appeals, in *Huddleston v. Luther*, explained that in order to classify whether the vehicle owned and driven by an employee of the insured was a nonowned auto, a court must first determine whether the vehicle was being leased, hired, rented or borrowed by the insured. 897 So.2d 887, 889 (La. Ct. App. 2005). Accordingly, there is persuasive authority supporting Acuity's position that the Court must determine whether the auto was borrowed. But the same authorities on which Acuity relies support Kloster's assertion that the second sentence of the definition informs the meaning of the first.

In *Benson*, the Illinois Court of Appeals explained that the second sentence of the definition is not a limitation; rather, it is an amplification and an attempt to add definition to what in fact is a nonowned auto. 714 N.E.2d at 563. The Tenth Circuit observed in *Hobbs Rental* that the nonowned auto provision "supplies the most obvious example of

11

coverage in its second sentence: privately-owned vehicles driven by HRC employees . . . in the course of HRC business." 566 F.3d at 953.  In other words, the second sentence in the definition of nonowned auto "makes explicit the *inclusion* of a category of vehicles that otherwise could have been questionable." *Molda*, 36 N.E.3d at 411.

As to the definition of "borrow," Kloster contends that, under Minnesota law, a vehicle is not borrowed by the insured if the vehicle remains in the possession and control of its owner or of the owner's permissive driver.  For example, in *Richardson v. Ludwig*, 495 N.W.2d 869 (Minn. Ct. App. 1993), an employee of a pizza franchise was involved in a motor-vehicle collision while making a delivery.  The employee was driving a vehicle owned by his stepmother.  *Richardson*, 495 N.W.2d at 871.  The franchise's insurance policy provided coverage for nonowned autos, which were defined under the policy as follows: "Only those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your employees or partners or members of their households but only while used in your business or your personal affairs."  *Id.*  The Minnesota Court of Appeals explained that "borrow" means "[t]o solicit and receive from another any article of property, money or thing of value with the intention and promise to repay or return it or its equivalent. . . .  The term may be used to express the idea of receiving something from another for one's own use."  *Id.* at 873 (quoting *Black's Law Dictionary* 167 (5th ed. 1979)).  Applying the definition, the *Richardson* court concluded that the franchisee did not borrow the vehicle.  *Id.*  Similarly, in *Juve v. Home Indemnity Co.*, the Minnesota Supreme Court concluded that a vehicle driven by a city's

12

volunteer firefighter in response to an emergency call was not "loaned"[3] to the city within the meaning of "hired auto" coverage. 301 N.W.2d 554 (Minn. 1981).

Relying on these cases and dictionary definitions, Kloster argues that "borrow" entails a change of possession and requires that one must receive something from another, with the intent that it or its equivalent will be returned. Acuity proffers several definitions of "borrow." In its coverage-denial letter and memorandum in support of its motion for summary judgment, Acuity asserts that "borrow" means "use without ownership." In its memorandum in opposition to Kloster's motion for summary judgment, Acuity argues that the distinction between coverage and non-coverage for "nonowned autos" depends on incidental use versus necessary use. Vehicles used only incidentally, Acuity contends, would not be "borrowed" autos, and would instead qualify as "nonowned autos" under the policy if used in Extreme Lawns' business. Acuity then argues in its reply brief that possession, dominion and control over the auto are required to create a borrowing relationship.

Acuity's argument—that the distinction in coverage for non-owned autos is incidental use versus necessary use—is unavailing. The frequency and the duration of an arrangement have no bearing on whether a vehicle has been borrowed. *ARC Mfg.*, 11 F. Supp. 3d at 906; *see also Metzger v. Country Mut. Ins. Co.*, 986 N.E.2d 756, 764 (Ill. App. Ct. 2013); *Am. Indem. Ins. Co. v. Code Elec. Corp.*, 760 P.2d 571, 574 (Ariz. Ct. App. 1988). Acuity also relies on the position of some courts that have concluded that the

---

[3]  The word "loan" is the correlative of "borrow." *Andresen v. Emps. Mut. Cas. Co.*, 461 N.W.2d 181, 184 (Iowa 1990).

purpose of a nonowned auto provision is to protect the insured during the occasional or infrequent use of a vehicle that the user does not own; the provision is not a substitute for insurance on vehicles furnished for the insured's regular use.  *Drake v. Snider*, 608 S.E.2d 191, 197 (W. Va. 2004); *Lancer Ins. Co. v. Gomez*, 799 So.2d 334, 336 (Fl. Dist. Ct. App. 2001).  But regardless of the purpose, insurance policies that limit coverage for nonowned autos to only infrequent or incidental use generally do so expressly.  *Cf. Allstate Ins. Co. v. Ibrahim*, 243 S.W.3d 452, 456 (Mo. Ct. App. 2007) (examining policy that defined nonowned auto as an auto not owned by the insured or available for the regular use of the insured); *Simioni ex rel. Cagney v. Cont'l Ins. Cos.*, 482 N.E.2d 434, 436 (Ill. Ct. App. 1985) (same); *Spaulding v. Concord Gen. Mut. Ins. Co.*, 446 A.2d 1172, 1173 (N.H. 1982) (same).

Acuity concedes that circumstances exist in which Extreme Lawns' use of an auto owned by an Extreme Lawns member for company business would not constitute a borrowing.  *See*, *e.g.*, *Essex Ins. Co. v. McClellan-Vick Consulting, Inc.*, Civ. No. 15-289, 2016 WL 7535368, at *10 (D.N.M. Aug. 25, 2016); *Olmstead v. N.H. Ins. Co.*, 824 N.E.2d 158, 460 n.3 (Ohio Ct. App. 2005); *Bamber v. Lumbermens Mut. Cas. Co.*, 680 A.2d 901, 903 (Pa. Super. Ct. 1996); *Ludwig*, 495 N.W.2d at 871 (pizza franchise did not borrow the vehicle driven by an employee making deliveries); *Gold v. Casserly Landscape, Inc.*, 853 P.2d 1341, 1343 (Or. Ct. App. 1993) ("[I]t was possible for a non-owned vehicle to be used for corporate business without being borrowed by the corporation . . . .").  Acuity maintained during the hearing on this motion that if Toni Warren had driven her auto to perform company business, Extreme Lawns would not have been borrowing the auto, and

14

Extreme Lawns' policy would provide coverage. But, relying on *ARC Manufacturing*, Acuity maintains that the result is different for Velde's pickup truck. According to Acuity, those cases in which courts have held that the insured did not borrow an auto owned by its employee or member when the employee used the auto to perform company business are distinguishable because the insured did not exercise any dominion or control over the vehicle.

For several reasons, *ARC Manufacturing*, while persuasive and well-reasoned, does not command the result that the pickup truck at issue here was borrowed. First, *ARC Manufacturing* is not controlling precedent for this Court. *Ctr. for Fam. Med. v. United States*, 614 F.3d 937, 942 (8th Cir. 2010). Second, *ARC Manufacturing* did not rely on Minnesota precedent for its definition of borrow. Third, the definition of "nonowned auto" in the insurance policy at issue in *ARC Manufacturing* did not include the second sentence that is present in the definition of "nonowned auto" here. As explained in *ARC Manufacturing*, if the driver received compensation for ARC's use of the truck, it was hired; but if the driver did not receive compensation for ARC's use of the truck, it was borrowed. 11 F. Supp. 3d at 907. The court in *ARC Manufacturing* did not delineate any requirements of dominion or control to be germane to the analysis. Applying *ARC Manufacturing*'s definition of "borrow"—temporary "use without ownership,"—*any* use of any auto owned by Extreme Lawns' members would be "borrowing" by Extreme Lawns. And the second sentence of the non-owned auto definition in the Acuity policy—"This includes autos owned by your employees, . . . members (if you are a limited liability company) or members of their households but only while used in your business"—would

15

be meaningless. Indeed, *ARC Manufacturing* does not support Acuity's argument that the pickup truck at issue here was borrowed.

In summary, the pickup truck driven by Velde was not borrowed by Extreme Lawns. Consequently, the insurance contract provides coverage for the pickup truck as a nonowned auto, and Kloster is entitled to summary judgment.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. The motion for summary judgment of Plaintiff ACUITY, A Mutual Insurance Company, (Dkt. 18), is **DENIED**.

2. The motion for summary judgment of Defendant Joseph Kloster, as Trustee for the heirs and next of kin of Tiffany Kloster, Deceased, (Dkt. 22), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 19, 2020    s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge